### No. 9291.

### THE BUTCHERS' UNION AND SLAUGHTERHOUSE COMPANY VS. STODDARD HOWELL.

It is an essential condition precedent for the recovery of damages on a bond furnished for an injunction, that the injunction be decided to have been wrongfully obtained.

A judgment which recognizes that an injunction was properly sued out and which dissolves it, owing to the happening of events subsequently occurring, is not one deciding that the injunction was wrongfully obtained and cannot serve as a foundation for a claim in damages.

APPEAL from the Civil District Court for the Parish of Orleans, *Lazarus, J.*

*B. R. Forman* and *E. H. McCaleb* for Plaintiff and Appellee.

*Thos. J. Semmes* and *Robert Mott* for Defendant and Appellant.

The opinion of the Court was delivered by

BERMUDEZ, C. J. This is an action for the recovery of damages claimed to have been sustained in consequence of the wrongful obtaining of an injunction.

The substantial averment, on which the claim is based, is: That S. Howell, maliciously and illegally obtained an injunction against the Butchers' Union and Slaughterhouse Company, giving B. Saloy, as surety on the bond required by law; that such injunction was subsequently judicially dissolved as having been wrongfully obtained; that the said company has sustained in various ways, damages exceeding twenty thousand dollars, which it is entitled to recover in full from the principal, Howell, and to the extent of five thousand dollars *in solido* from the surety, Saloy, such being the amount of the bond furnished for the injunction.

After exceptions and answer, the case was tried by a jury, who returned a verdict against Howell for $13,810, and against Saloy for $5000, with interest against each. From the judgment in accordance therewith, the defendants appeal.

The decision of this controversy depends upon the solution of the questions: *Whether* the injunction was dissolved as having been wrongfully obtained, and, if so, whether it was palpably misused and has caused damage to the plaintiff.

The statement of the case in which the injunction was obtained and dissolved, is to be found in 36 Ann. p. 63.

The object of that injunction was to prevent the establishment and maintenance of a slaughterhouse in the Third District of the city and the cutting of the levee, as an incident to the business, for the purpose of discharging into the river the impure liquids and substances or refuse of the slaughterhouse.

The application for the injunction was grounded on the averment that there was no law of the State, or ordinance of the city, concurred in by the Board of Health, which authorized the enterprise in the locality, which authority was an indispensable condition precedent; that the defendants were about to erect and carry on a slaughterhouse there, without such authority, and that the construction and maintenance of such a house would be a nuisance which should be prevented. 33 Ann. 940; 36 Ann. 63.

The suit was brought and the injunction allowed and issued on the 13th of November, 1880. Although a rule had been shortly after taken to dissolve the injunction, it was not until December 23, 1881, that the writ was pressed to be dissolved, on the ground that concurrent legislation by the city and the Board of Health on November 25, previous (1881), had removed all impediments to the construction and maintenance of the slaughterhouse.

The district court dissolved the injunction except as to the cutting of the levee, which was not to take place until municipal authority had been procured.

On appeal, this Court found that "the city authorities had not acted on the matter when this injunction was obtained; but, since then and before the trial, they enacted ordinances that had been approved by the Board of Health, under which the location of a slaughterhouse at this point is permitted and declared that the defendant (the present plaintiff) was without authority to place the slaughterhouse at this spot, until the city authorities had exercised the power delegated to them in the matter." 36 Ann. p. 63.

The court, considering that the authority given by the city and the Board of Health *after* the injunction had issued met legal exigencies, thought it should dissolve the writ. It did so, condemning the company, however, to pay all costs incurred *before* the passage of the city ordinances; and the plaintiff, Howell, to pay those incurred subsequently.

The condition of the bond furnished to obtain the injunction is averred to be, and in reality is, that the principal and surety therein shall pay to the company all such damages as it may recover against them, in case it should be *decided* that the injunction was wrongfully obtained.

Now the record does not show that any judgment was ever rendered, deciding that the injunction had been wrongfully obtained: It shows that the injunction was simply *dissolved*.

The mere dissolution of an injunction does not necessarily imply that the injunction was wrongfully obtained.

In this very case in which it issued, this Court held that it was properly sought and granted; because at the time it was asked and allowed, the Slaughterhouse Company had no authority to locate its establishments in the described portion of the city.

If Howell then had a right to ask and obtain the injunction, the exercise of that right could inflict no damage.

It is essential to a recovery on the bond that the injunction be *decided* to have been *wrongfully obtained;* in other words: That the plaintiff who procured the writ be judicially declared not to have been originally entitled to it. 76 N. Y. 600; 15 Hen. 305; 61 How. N. J. Practice R. 40.

It has also been held that, if when the bill was filed, there was good cause for the injunction, subsequent events justifying its dissolution

will not subject the party who obtained it or his surety to a claim in damages. 40 N. J. L. 340.

In a case in this State, in which an injunction had been taken against executory process for the price of sale, on the ground of the fear of eviction, it appearing that the suit to evict having been decided in favor of the title before the injunction was tried, this court held on good reasoning and authority that the subsequent proper dissolution of the injunction in favor of the title could not and did not render the parties liable in damages. It emphatically said that the decision did not determine, expressly or by implication, that the injunction had been "*wrongfully obtained*" which by the terms of the bond and of the law, formed the condition of liability. 35 Ann. 375 ; Carrol vs. Read heimer.

It is laid down, therefore, as a uniform rule on this subject, that whenever an injunction was rightfully obtained upon sufficient grounds, but is afterwards dissolved upon the removal of those grounds, complainant should not be required to pay damages upon the dissolution, having had good cause for the injunction in the first instance. V. High on Injunctions § 980, p. 565, Ed. 1874, and authorities in note; Ib. § 1650· Ed. 1880 chap. xxxii p. 1081. See also Davis vs. Millaudon, 14 Ann. 808; 15 Ann. 81; 19 Ann. 78 ; 10 Ben. Monroe (Ky.) 372; 71 N. Y. 109 ;. 55 Miss, 567.

The condition of the bond not having happened, that is, the injunction never having been *decided* to have been *wrongfully obtained*, it. is clear that, neither the surety nor the principal can be held responsible on it.

It is true that after the municipal authority had been granted, with the concurrence of the Board of Health, which authority did not exist when the injunction was asked, there was no valid reason for its. continuance and that Howell perhaps ought himself to have dissolved it, recovering his costs; but his failure to have done so, does not make him, or the surety, liable in damages on the bond from and after the granting of the authority. Doing so would be injecting a condition into the law and the bond, which never was designed to form part of it and which was not incorporated into it, viz: The payment of damages, in the double alternative event: 1. That the injunction was decided to have been *wrongfully obtained*; 2. That, if properly obtained, it was *wrongfully maintained*, in consequence of a fact arisen since the granting of the injunction and the signing of the bond.

The obligations growing out of the bond cannot be enlarged, or made more onerous. The parties are entitled to stand strictly on the terms of the contract, beyond which their liability cannot be extended.

If Howell be not liable on the bond, how can he be held, unless it be that he acted with malice, without probable cause; that he has palpably misused the harsh remedy to which he has resorted, and which was decided to have been wrongfully obtained. Responsibility could be saddled upon him only in the same manner that it might be fastened upon one misusing the remedy of provisional seizure and even of injunction in certain exceptional instances, which issue wthout bond. C. P. 284 *et seq.* 295; 739 *et seq.* In the case of misuse of provisional seizure, the condition precedent for the recovery of damages is likewise that it be decided to have been *wrongfully obtained.* C. P. 295.

The words of the law as to Howell, C. P. 295, like those of the law and bond as to Saloy, C. P. 304, express the only condition on which a liabilty can be affixed for wrong done. The plaintiff in the provisional seizure "shall be personally responsible for all damages suffered by the defendant, should the seizure have been *wrongfully obtained.*" The words of the law relative to injunctions are exactly the same.

In that class of cases, the jurisprudence is settled that where the writ issues without malice and with probable cause, no damages are allowable. 6 Ann. 402; 8 Ann. 481; 16 Ann. 1; 6 Ann. 178, 775. This doctrine has been applied even where a bond has been furnished. 14 Ann. 808.

It is, no doubt, the duty of the court to mulct in damages those who *wantonly* abuse the equitable remedy of injunction. 11 L. 486; 2 Ann. 360; 5 Ann. 155; 23 Ann. 436; but, in order to recover, it is not only indispensable to *aver*, but also to *prove* both malice and want of probable cause. A palpably wrongful abuse of the remedy as well as the damages claimed, must besides be well established. H. D. p. 823; L. D. 381. vo. Malicious Prosecution; also 71 N. Y. 109; 10 B. Mons. 17; 55 Miss. 567; 30 Ann. 1228; Manning's Unrep Cases 38.

The rule has been announced even to be, that one may proceed to enforce a legal right in a civil action and that though he did it maliciously, he is not liable therefor, if there be probable cause or ground for it. V. Palmer vs. Foley, 71 N. Y. 109, and authorities there cited.

Far from disclosing malice and want of probable cause and palpable wrongful use, the record unequivocally shows and this Court has declared in the injunction suit itself, that, when the writ issued, the company was without authority to place the slaughterhouse at the spot in question, and that as the previous authority was essential and had not *then* been procured, the plaintiff had a right to complain, and that the writ properly issued. This was so much the sense of the court, that it prorated the costs, sentencing the company to those

anterior to the passage of the ordinances and the plaintiff to those afterwards incurred. 36 Ann. 63; 33 Ann. 940.

This view of the case renders unnecessary an investigation into the question of the *quantum* of damages alleged to have been sustained. If wrong was done, if injury was suffered, it must be viewed as *damnun absque injuria* for which we are impotent to award relief.

It is therefore ordered and decreed, that the verdict of the jury be quashed and set aside, that the judgment thereon and appealed from be avoided, reversed and annulled; and, it is now ordered and adjudged, that the demand of plaintiff be rejected, with judgment in favor of defendants, with costs in both courts.

Rehearing refused.